884 F.2d 1389
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
RHODES CONSTRUCTION CORPORATION, Plaintiff-Appellee,
v.
PEOPLES PLAZA WEST, LTD., Defendant-Appellant.
 No. 88-3889.
 United States Court of Appeals, Fourth Circuit.
 Argued May 8, 1989.
Decided Aug. 22, 1989.
 
 Frank Earl Riggs, Jr. (Smith, Currie & Hancock on brief) for appellant.
 Robert Bruce Wedge (Stokes, Shapiro, Fussell & Wedge on brief) for appellee.
 Before WILKINSON, Circuit Judge, HAYNSWORTH, Senior Circuit Judge, and CHARLES H. HADEN, II, Chief United States District Judge for the Southern District of West Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Peoples Plaza West, Ltd. appeals a judgment of the district court which found that Peoples had breached an oral contract entered with appellee, Rhodes Construction Corp., to construct approximately two miles of roadway. The district court held Rhodes entitled to recover the sum of $30,795.25, the amount of the unpaid balance of an October 1, 1986 billing, and denied various counterclaims asserted by Peoples against Rhodes. We affirm the judgment of the district court.
 
 I.
 
 2
 In the fall of 1984, Peoples purchased Benchmark Mountain, near Highlands, North Carolina, in order to build a mountain resort. Peoples planned to subdivide the mountain land into lots for sale to the public. Before sale, however, Peoples needed to construct roads, water lines, and a sewer system. In late 1984 or early 1985, Peoples entered into an oral contract with Rhodes to build approximately 8,900 linear feet of asphalt-covered roadways from a public highway to the Benchmark property and to install water and sewer lines and systems. The parties stipulated the following terms of the contract at trial:
 
 
 3
 1) Plaintiff was to construct a road and was to be paid $20.00 per linear foot. This was further broken down for purposes of payment to $3.50 per linear foot for clearing; $9.00 per linear foot for rough grading and $7.50 per foot for paving;
 
 
 4
 2) Plaintiff was to be responsible for whatever rock blasting was necessary for road construction and was to be paid $20.00 per cubic yard;
 
 
 5
 3) Plaintiff was to be paid $9.75 per linear foot for rock blasted for water and sewer lines;
 
 
 6
 4) The road was to consist of 6 inches of base gravel and 2 inches of asphalt;
 
 
 7
 5) Plaintiff was to clear the well sites on a time and materials billing basis;
 
 
 8
 6) The actual construction of water and sewer lines was to be paid for at unit prices;
 
 
 9
 7) All billings by Rhodes Construction were to be submitted to the engineering firm of Cranston, Robertson and Whitehurst for approval prior to payment by Peoples.
 
 
 10
 Rhodes Construction brought suit in district court claiming that it was not paid in accordance with the terms of the contract and that it was entitled to recover the balance of the contract. The parties did not dispute that under the oral contract Rhodes was to submit monthly billings based upon the work performed; that Peoples hired the engineering firm of Cranston, Robertson and Whitehurst (Cranston) to oversee the Benchmark Mountain project; that Rhodes was to submit its billings to Cranston for approval prior to payment; and that Peoples would not make payment without Cranston's approval.
 
 
 11
 On approximately October 17, 1986, Rhodes submitted to Peoples its billings for work, including all paving performed on the roadways, completed from "July 1 thru October 1, 1986 in the total sum of $146,152.74." Cranston, the engineering firm, approved the bill and, on November 12, 1986, Peoples paid $102,924.49. Later Peoples paid an additional amount of $12,433.00, leaving unpaid $30,795.25. Payment concededly was withheld because of Peoples' concern over the quantity of rock claimed to have been removed from the outset of the job, rather than a determination that the amount was not due and owing on the work performed during the last billing period. Rhodes sued Peoples for breach of contract. Peoples then counterclaimed for damages in excess of $700,000.00 based on claims for overbillings for rock removal. It also counterclaimed for costs incurred in securing a "turnkey" job, including the fine grading and seeding of shoulders, removal of trees and stumps, and excavation of drainage ditches along the roadway.
 
 
 12
 The district court declined to award Peoples damages for delay, finding that the original contract contained no completion date and that there had been no modification of the contract to impose a May 1, 1986 completion date. The district court further found that the agreement was itemized and did not contemplate a "turnkey" job. The district court also found that Peoples was not entitled to recover on its counterclaim for alleged overbilling on rock removal under the contract. The court found too that Rhodes did not breach its contract in proceeding to apply the base and asphalt when, after being advised by Rhodes that the roadway had not been fine graded, Peoples insisted that the base and asphalt be laid down before its grand opening. Finally, the court found that Peoples breached the contract in refusing to pay the October, 1986 billing. Peoples appeals.
 
 II.
 
 13
 The parties' disagreements may be divided into several areas: first, whether the trial court erred in finding that Peoples had waived or was estopped from contesting the billings for rock blasting and removal; second, whether the court erred in not finding that Rhodes breached the contract in failing to present Peoples with a turnkey operation; third, whether Peoples was barred by waiver from bringing a counterclaim based on latent defects in roadway construction; and, finally, whether the court erred in finding that Peoples breached its contract with Rhodes by withholding payment in November 1986 for part of Rhodes' October 1986 monthly billing.
 
 
 14
 First, we hold that the district court did not err in finding that the rock removal work was accepted by Peoples with knowledge of possible problems in measurements, or, in the alternative, that Peoples ratified the measurements when the bills were approved by its engineer and paid, thus estopping Peoples from denying their accuracy.
 
 
 15
 The parties disagree as to the appropriate measurement of the blasted rock quantity. According to Rhodes, Cranston explained from the outset to Peoples that there were different ways to measure the rock removed in order to verify how much should be paid to Rhodes. Cranston allegedly told Peoples that the best procedure for calculating blasting was to use a survey crew to map the surface before and after the rock was removed, but that this was an expensive procedure. Peoples chose to have the Cranston firm measure the excavated areas at the time the rock was blasted in order to verify the billings of Rhodes.
 
 
 16
 Brian Peoples, an engineer, also inspected the Rhodes work for Peoples. Cranston, hired by Peoples to monitor Rhodes, later testified that the amount of rock removal billed by Rhodes was not overestimated. David Peoples, who was responsible for the payments from Peoples to Rhodes, testified that he had questions regarding the rock billings from the outset of the job. He did not, however, tell Rhodes or the Cranston firm of his concerns or ask for further substantiation of the billings. Prior to the October billing, Peoples made all rock removal payments in a timely manner without raising any objections. Peoples also failed to take any corrective measures or even to convey to Rhodes its concerns before they withheld the October payment.
 
 
 17
 The district court thus found that Peoples suspected the rock measurements might be in error. Under Cantrell v. Woodhill Enterprises, Inc., 160 S.E.2d 476, 481 (N.C.1968), "[w]here work is accepted with knowledge that it has not been done according to the contract or under such circumstances that knowledge of its imperfect performance may be imputed the acceptance will generally be deemed a waiver of the defective performance." The district court did not err in holding that Peoples' timely payment without objection of the rock removal billings and the approval of such payments by the very engineer it had hired to oversee the project operated as a waiver of Peoples' claims for overbilling on the rock removal.
 
 
 18
 The parties also disagree over the road construction work itself. Peoples' claims that the $20.00 per linear foot of roadway also included an agreement to furnish a "turnkey" roadway. Specifically, Peoples claims that the unit price included cleanup of the site, removal of stumps and trees, slope dressing, drainage construction, and seeding of the road, slopes and embankments. As the district court noted, however, if the $20.00 per linear foot price was to cover a turnkey operation, it would be inconsistent to then break that price into $3.50 for clearing the right-of-way, $9.00 for "rough grading," and $7.50 for paving. We agree with the district court that it seems unlikely that the oral contract would have specified a price for rough grading and yet assumed the inclusion of fine grading and seeding. We therefore affirm the denial of Peoples' counterclaim for the costs of finishing the slopes and ditches.
 
 
 19
 Peoples also claims that there were latent defects in the road for which Rhodes had been paid. Peoples alleges that there were not six inches of stone base at the time the asphalt was applied, and that rocks could be seen protruding from the asphalt in various locations. An independent engineering firm in Charlotte, North Carolina, hired to test the road, confirmed the rapidly deteriorating condition of the roadway, the inadequate drainage, and the absence of six inches of base and two inches of asphalt.
 
 
 20
 The district court, however, credited the testimony of Billy Richard Rhodes that he advised Peoples that an improperly prepared sub-base would lead to problems with the road at some future date and that Peoples insisted that the work proceed notwithstanding. We see no basis to overturn the finding of the district court that Peoples waived the contractual specifications in order to accomplish completion of the roadway for the "grand opening" of the project. Rhodes therefore did not breach the contract in proceeding to apply the base and asphalt in the manner it did.
 
 
 21
 Finally, Peoples appeals the district court's finding that it breached the contract by failing to pay the full October billing from Rhodes. The court found that Rhodes was entitled to receive $30,795.25, the unpaid balance of the October 1, 1986 billing, and appropriate interest. We affirm this holding of the district court because Peoples has not adduced any valid reason to excuse its payment of the balance of the October 1986 billing.
 
 
 22
 For the foregoing reasons, the judgment of the district court is in all respects
 
 
 23
 AFFIRMED.